# IN THE COURT OF APPEALS OF IOWA

No. 23-0293
Filed May 22, 2024

**NICHOLAS DEAN FREITAG,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Cerro Gordo County,
Rustin Davenport, Judge.


        An applicant appeals a district court ruling denying his applications for
postconviction relief. **AFFIRMED.**


        Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney
General, for appellee State.


        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

In this appeal from postconviction-relief proceedings challenging his guilty pleas to criminal charges from 2017, Nicholas Freitag claims that his defense attorneys misadvised him about the interplay between his overlapping state and federal sentences—"that his state time would count while he was in federal custody." He also claims that one of his attorneys pressured him to withdraw a motion in arrest of judgment. The district court rejected these claims, as do we upon our de novo review of the record.

## I.  Background Facts and Proceedings

In April 2017, after a physical altercation with his girlfriend, Freitag pled guilty to possession of a firearm as a felon and domestic abuse assault in case number FECR026061. These were reduced charges under a plea agreement with the State,[1] in which the State also agreed to dismiss another domestic abuse charge and a pending contempt for violating a no-contact order between Freitag and the victim.

After his guilty plea was accepted by the court, Freitag's attorney withdrew, and Timothy Lapointe appeared as defense counsel. He filed a motion in arrest of judgment challenging Freitag's guilty plea on May 1. Lapointe's paralegal then emailed Freitag a copy of the State's previously offered plea deal, which remained open until the hearing on Freitag's motion. Freitag replied that he did not want to

---

[1] The trial information initially charged Freitag with being a felon in possession of a firearm as a habitual offender, domestic abuse assault while displaying a dangerous weapon, and domestic abuse assault impeding breathing or circulation of blood causing bodily injury as a habitual offender.

withdraw the motion until the no-contact order was dropped. In response, Lapointe offered Freitag the following advice:

> I strongly recommend that you withdraw the motion in arrest of judgment right away. I think that is your only chance of avoiding prison. I'm not saying that that will guarantee you a probation term, but I would see virtually no chance of avoiding prison if you withdraw your guilty plea and get convicted later.

Freitag answered: "Ok withdraw it if you can get them to drop [no-contact order]."

Lapointe filed a withdrawal of the motion in arrest of judgment, and the case proceeded to sentencing. At the sentencing hearing, the district court confirmed with Lapointe that Freitag was withdrawing the motion in arrest of judgment. The parties then provided their sentencing recommendations. The State's was consistent with the plea agreement—an indeterminate term of five years in prison on the felon-in-possession charge and two days in jail for the domestic, as recommended by the presentence investigation report—and included a request to extend the no-contact order. When the State made the latter request, Freitag interjected, "Really?" Lapointe then urged the court to place Freitag on probation and terminate the no-contact order. The victim made the same request during her impact statement to the court.

In the end, the court decided prison was appropriate, although it granted Freitag's request to terminate the no-contact order. Mittimus issued immediately, but Freitag filed a notice of appeal and posted an appeal bond. He was released from custody on May 24. While his appeal was pending, Freitag was arrested for another domestic abuse assault against the same victim in September. He was charged in case number FECR026759 with domestic abuse assault by impeding breathing or circulation of blood causing bodily injury as a habitual offender.

Freitag bonded out a few days later, and attorney Steven Kloberdanz was appointed to represent him.

Freitag was not out of custody long before he was arrested again—this time on a federal charge in February 2018. In April, while in federal custody, Freitag notified the court that he intended to plead guilty to his state charge in FECR026759, and a plea hearing was set. Later that month, the State moved to continue the plea hearing, noting "that the defendant has sentencing set in federal court" and an offer had been sent to "defendant's attorney to hopefully resolve these matters 'on paper' without removing the defendant from federal custody."

Meanwhile, this court filed its appellate decision in Freitag's first case. *See State v. Freitag*, No. 17-0815, 2018 WL 1629235, at *1 (Iowa Ct. App. Apr. 4, 2018). We affirmed his conviction but preserved his ineffective-assistance claim that Lapointe pressured him into withdrawing the motion in arrest of judgment for a possible postconviction-relief proceeding. *Id.* at *4–5. Procedendo issued in May.

The next month, Freitag filed a written guilty plea in FECR026759 to the lesser offense of domestic abuse assault by impeding breathing or circulation of blood and requested immediate sentencing. The court entered its judgment on June 14, sentencing Freitag to a term of imprisonment not to exceed two years, consecutive to the sentence imposed in FECR026061.

In September, Freitag was sentenced in federal court to thirty-seven months in prison. While we do not have any of the federal court documents in the record before us, a later filing from Freitag in these proceedings stated, "the federal courts ordered that the[ir] term was to be served consecutively to the undischarged term

for Cerro Gordo County Case No. FECR026061." A couple of months after his federal sentencing, Freitag filed a motion in FECR026061 asking "that the Courts run this sentence and all cases ran with this sentence . . . concurrent with the time I am currently serving in a Fed[e]ral Prison." The court denied his request. All was quiet until February 2020, when Freitag was nearing the end of his federal sentence. He then filed a series of motions in both state court cases, seeking to amend or correct his sentences because he understood "that when [he] ple[d] guilty and was sentenced that [his] time started June 14, 2018 for both cases." Each of his requests was denied.

So Freitag applied for postconviction relief from both cases, which were considered together by the district court at a hearing in December 2022. Freitag claimed his defense attorneys were ineffective because they misinformed him "that he would receive credit for his sentences in his Iowa state case[s] for his time s[p]ent in federal custody." And he resurrected the preserved claim in his direct appeal from FECR026061, that Lapointe pressured him to withdraw the motion in arrest of judgment.

At the hearing, both attorneys testified that they did not provide Freitag with any advice about his federal charge because neither practiced in federal court. Lapointe explained, "I never discuss federal criminal charges with clients or the effect of a federal criminal charge, as I don't do federal law." He believed that he "maybe refer[red] him to federal counsel on that." Kloberdanz similarly testified, "I told him that I could not advise him regarding any federal matters for two reasons. One, because I don't practice in federal law; and two, as I understand it, he had an attorney representing him in the federal matter."

Freitag's testimony was not that far off from Kloberdanz's. When asked whether he talked to Kloberdanz about his federal charges, Freitag said: "He had told me that I needed to speak with my federal attorney in regards to my federal stuff, that he couldn't help me on the federal stuff but he could help me on my state stuff." Postconviction-relief counsel then questioned, "So did he ever give you a recommendation about what it would have meant for—what sort of time credit you'd receive?" Freitag responded:

> When we went over the waiver of presence, we went over it together; and he asked me to—He goes, "Can you just sign immediately, to report to jail so that you're—as soon as the Judge issues the mittimus, but your time won't start."
> . . . .
> Q. So did—you thought you were receiving credit for your federal sentence, or what was your—A. For my state—for my state credit. I was receiving state credit.
> Q. You thought you would be receiving state credit for the time you were spending in federal custody? A. Yes.
> Q. And you thought that Mr. Kloberdanz was telling you that? A. Yes.

Freitag did not testify about any discussions he had with Lapointe concerning his federal charge.

As for the motion in arrest of judgment, Freitag testified that Lapointe told him "if I didn't withdraw the motion in arrest of judgment, that I would most likely be going to prison, it looked bad, and that I had no grounds for it." For his part, Lapointe explained that he advised Freitag to withdraw the motion "because we had a plea offer that expired at the time of any further court hearing; and I didn't want him to miss out on the benefit of that plea offer."

After hearing this testimony, the district court rejected both of Freitag's claims. The court found Freitag's testimony was not credible and concluded "that

he has failed to demonstrate by a preponderance of evidence that he is entitled to any relief in this matter." Freitag appeals.

## II. Standard of Review

We review the district court's denial of an application for postconviction relief alleging ineffective assistance of counsel de novo, although we give weight to the court's findings on witness credibility. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).

## III. Analysis

Because Freitag's claims concern the effectiveness of criminal trial counsel, he must prove by a preponderance of the evidence that (1) his counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). "Failure to prove either prong is fatal to an ineffective-assistance-of-counsel claim." *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019). We agree with the district court that Freitag did not prove the first prong for either claim—that his attorneys' "representation fell below an objective standard of reasonableness." *Id.* (citation omitted).

Starting with the sentencing-credit issue, Freitag's claim "does not involve trial tactics, strategies, or other judgment calls that we do not ordinarily second-guess." *Meier v. State*, 337 N.W.2d 204, 206 (Iowa 1983). Instead, his claim is that defense counsel failed to correctly advise him about whether "his state time would count while he was in federal custody." While "defense counsel does not have a duty to inform a defendant about the collateral consequences of a guilty

plea," misinforming a defendant about those consequences is reversible error. *Stevens v. State*, 513 N.W.2d 727, 728 (Iowa 1994) (per curiam).

There was no misinformation here. We first observe that Freitag pled guilty and was sentenced in the case with Lapointe close to nine months *before* he was arrested on the federal charge. Freitag presented no evidence that the federal charge was pending, or even being investigated, while Lapointe was representing him. *See Ali v. State*, No. 23-0251, 2024 WL 960356, at *2 (Iowa Ct. App. Mar. 6, 2024) ("[C]ounsel did not breach any duty to [defendant] by failing to inform him of the impact his guilty plea would have on a future federal indictment."); *State v. Roby*, No. 19-0551, 2020 WL 1548514, at *6 (Iowa Ct. App. Apr. 1, 2020) (holding counsel did not have a duty to speculate about how pleading guilty to state court charges may affect the defendant if he pled to other pending federal charges); *Dillon v. State*, No. 12-1200, 2013 WL 4011062, at *2 (Iowa Ct. App. Aug. 7, 2013) ("[T]here are numerous collateral consequences of a guilty plea that need not be pointed out by the court or counsel, including what effect a plea might have on future criminal activity or a conviction."). Nor did Freitag testify that Lapointe provided him with any advice about the federal charge.

While Freitag testified that he did receive some advice from Kloberdanz, which he understood to mean he "would be receiving state credit for the time" spent in federal custody, the district court did not find him credible. We give weight to that finding on appeal, *see Sothman*, 967 N.W.2d at 522, which the record supports. Freitag agreed at the postconviction-relief hearing that Kloberdanz told him "to speak with my federal attorney in regards to my federal stuff, that he couldn't help me on the federal stuff." His written guilty plea did not mention the

federal charge, other than to note the dismissal of an unrelated charge for felon in possession of a firearm "does not preclude and/or limit any federal prosecution for the same offense." And, as the district court reasoned, "the federal sentence had not yet been imposed. Under these circumstances, the attorneys properly told Freitag that he should take up the question of the interplay between the state and federal criminal matters with his federal criminal attorney." With these facts, we find Freitag did not prove that his attorneys failed to perform an essential duty.

We reach the same conclusion with Freitag's second claim about Lapointe's withdrawal of the motion in arrest of judgment. Freitag argues "that because of the threat of prison and the immediate threat of going to jail that he felt pressured to withdraw the motion in arrest of judgment even though he did not want to do so." Our supreme court, however, has held an accurate statement by defense counsel that a defendant "may receive a longer sentence if he goes to trial" does not "render his plea involuntary." *State v. Speed*, 573 N.W.2d 594, 597 (Iowa 1998). We accordingly agree with the district court that "Lapointe advising Freitag that, in Lapointe's professional opinion, Freitag would have a better chance at sentencing if the motion in arrest of judgment was withdrawn does not constitute pressure such that Freitag felt he had to do something against his own interest." As Lapointe testified:

> I gave him my best judgment with—it's stated in writing—no guarantees. He accepted that in writing when he agreed to withdraw the . . . motion in arrest of judgment. And we made our best pitch to the court at sentencing, and we lost. And now he wants to say everybody else screwed up but him.

*See State v. Soder*, No. 01-1989, 2002 WL 1974020, at *1 (Iowa Ct. App. Aug. 28, 2002) ("We will not interfere simply because the strategy led to a result [the defendant] now considers unfavorable.").

## IV.    Conclusion

We affirm the district court's ruling, concluding that it properly denied Freitag's claims of ineffective assistance of counsel.

**AFFIRMED.**